| | |
|---|---|
| JUANITA B. TAYLOR, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Claimant Juanita B. Taylor ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on 29 May 2007, alleging disability beginning 3 February 2006. (R. 9). Her claim was denied initially and upon reconsideration. (R. 9, 45, 49). A hearing before the Administrative Law Judge ("ALJ") was held on 14 December 2009, at which Claimant was represented by counsel. (R. 22-41). On 29 January

2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 6-15). On 2 June 2010, the Appeals Council denied Claimant's request for review. (R. 1-4). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) improper assessment of Claimant's credibility; (2) improper evaluation of the treating physician's opinion; and (3) failure to acknowledge and explain the weight accorded to Medicaid's determination of disability in accordance with Social Security Ruling ("S.S.R.") 06-3p. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings

at 1. ("Pl.'s Mem.").

# FACTUAL HISTORY

## I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 11). Next, the ALJ determined Claimant suffered from the severe impairment of migraine headaches but found Claimant's diagnosed panic disorder to be nonsevere. *Id.* In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found Claimant had mild limitations in activities of daily living, social functioning and concentration, persistence or pace and experienced no episodes of decompensation for an extended duration. (R. 11-12). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[1] with exposure to hazards on no more than an occasional basis. (R. 12). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 14). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of her past relevant work as a housing counselor and management clerk. (R. 15).

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, s/he can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

4

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 53 years old, unemployed and residing with her son. (R. 25, 36). Claimant has an eleventh grade education. (R. 25). Claimant was last employed as a public housing counselor. (R. 26).

Claimant testified that "migraine headaches with stroke-like symptoms" prevent her from working. (R. 27). Claimant testified to suffering from migraine headaches since the seventh grade and to trying "at least" thirty different medications, none of which has stopped her headaches or stroke-like symptoms. (R. 33). Claimant experiences headaches two to four times per month lasting one to two days. (R. 32). When Claimant experiences migraine headaches, Claimant retires to her bedroom and places the bedcovers over her head as she is unable to tolerate any light or sound. Claimant testified her physicians have advised her that there is no surgery or procedure available to minimize her headache pain and that Claimant simply must "live with" the headaches. (R. 38).

Symptoms experienced by Claimant include blurred, and at times, limited vision, numbness along her right side, nausea, "slow" speech, concentration and memory difficulties. (R. 29, 31, 36, 39). Claimant experiences these symptoms on a weekly basis. (R. 34). Claimant testified further that she "get[s] disoriented every day." (R. 37). In explaining her vision difficulties, Claimant testified that she "gets spots" in her eyes and "sometimes" loses complete vision in one eye. (R. 31). As for her speech difficulties, Claimant clarified she "can't get [her] words out properly" and "drag[s] [her] words out." (R. 33). Claimant takes an aspirin a day for stroke preventive purposes and Paxil for anxiety as stress triggers the stroke-like symptoms. (R. 34).

As for daily activities, Claimant testified she does not leave the house. (R. 31). Claimant testified initially that she "can't drive," but later testified she "tr[ies] to on [her] better days." (R. 31).

Claimant explained she does not cook because she tends to forget to turn off the stove. (R. 36). Claimant testified that she cannot vacuum or perform any tasks that make loud noises. (R. 36). Claimant spends at least three to four days a week in her bedroom with the lights out. (R. 37).

## DISCUSSION

### I. The ALJ improperly assessed Claimant's credibility.

Claimant contends the ALJ failed to properly assess Claimant's credibility. Pl.'s Mem. at 7. Specifically, Claimant contends the ALJ improperly discredited her testimony because her subjective reports regarding her migraine headaches and the objective evidence on the record were inconsistent. *Id.* This court agrees.

Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under this regulation, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R.

§ 404.1529(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See id.* at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3.

In discounting Claimant's complaints of numerous symptoms associated with her headaches, it appears that the ALJ relied, at least in part, on a lack of objective evidence.[2] However, any such reliance by the ALJ was error as migraines cannot be diagnosed or confirmed through laboratory or diagnostic testing. *See Sidbury v. Astrue*, No. 7:08-CV-168-FL, 2009 U.S. Dist. LEXIS 86756, at *19, 2009 WL 3029741, at *6 (E.D.N.C. Aug. 25, 2009); *accord Duncan v. Astrue*, 4:06-CV-230-FL, 2007 U.S. Dist. LEXIS 97298, at *17-18, 2008 WL 111158, at *6 (E.D.N.C. Dec. 4, 2007); *Parsley v. Astrue*, No. 02:08-CV-01227, 2009 U.S. Dist. LEXIS 56837, at *10, 2009 WL 1940365, at *4 (W.D. Pa. July 2, 2009) (noting "migraine headaches do not stem from a physical or chemical abnormality which can be detected by imaging techniques or laboratory tests") (citation omitted). Rather, migraines are diagnosed through medical signs and symptoms such as nausea, aura and sensitivity to light and sound. *See Sidbury*, 2009 U.S. Dist. LEXIS 86756, at *19, 2009 WL 3029741, at *6 (explaining "signs and symptoms, such as nausea, vomiting, eye pain, aura,

---

[2] In reviewing Claimant's credibility, the ALJ cited the following: (1) March 2006 MRI and MRA results of Claimant's brain which were normal (R. 199-201); (2) a notation from 13 March 2006 indicating Claimant's recent eye examination was normal (R. 238); (3) a normal CT scan performed in April 2007 (R. 226); and (4) neurological examination findings consistently showing Claimant to be awake and alert, oriented to time, place and person, normal cranial nerves, motor sensory function, reflexes, gait and coordination (R. 211, 217, 231, 237, 243, 246, 248, 252-53, 258, 260, 304). (R. 14).

7

photophobia and phonophobia, are often the only means to prove the existence of migraine headaches and should be viewed as objective evidence") (citing *Ortega v. Chater*, 933 F. Supp. 1071, 1075 (S.D. Fla. 1996)).

Here, the record reveals that since 24 March 2006, when Raja Bhat, M.D., Claimant's treating physician, began treating Claimant for migraine headaches, there have been multiple references to Claimant's continuing treatment for and/or continuing complaints of migraine headaches associated with symptoms such as blurry vision, dull pressure in the left side of her head, disorientation, fatigue, photophobia, phonophobia, nausea and vomiting. *See* (R. 239, 243-44, 247, 249, 253, 257, 259); [DE-27.2 at 22].[3] The record reveals further that Claimant has been prescribed a variety of medications for this condition, all of which have proven ineffective. (R. 13, 241-42, 246, 248, 252, 254-55, 260); [DE-27.2 at 23]. Indeed, on 8 March 2007, after noting the ineffectiveness of the numerous medications prescribed over the last year, Dr. Bhat concluded he would arrange a neurology consultation with University of North Carolina Hospitals ("UNCH").[4] (R. 258). On 3 October 2007, Claimant underwent a consultation at UNCH with Suvarchala Somayajula, M.D. [DE-27.2 at 22]. Dr. Somayajula prescribed Neurontin in response to Claimant's complaints of weekly headaches associated with blurred vision, photophobia, phonophobia, nausea, vomiting, right-sided

---

[3] On 17 December 2009, Claimant's counsel submitted additional medical records to the ALJ, including treatment records by Dr. DeMaria and a state agency Medicaid disability decision. [DE-27.2]. With the exception of the Medicaid disability decision, (R. 172); [DE-27.2 at 19], the court was unable to locate these records in the administrative transcript. Rather, these additional records were included as an attachment (entitled "Exhibit Evidence omitted from Transcript that was part of the Administrative Record") to Claimant's memorandum. [DE-27.2]. Defendant does not contest Claimant's assertion that this evidence was originally part of the administrative record. Accordingly, the court considers this evidence as part of the evidence of record before the ALJ.

[4] On 8 May 2007, Dr. Bhat indicated he had received no response from UNCH and would "once again try and refer [Claimant] to [the UNCH] neurology clinic for consultation." (R. 260).

numbness, slurred speech and right facial droop. *Id.* On 27 February 2008, Claimant was again seen by Dr. Somayajula for similar complaints. *Id.* Dr. Somayajula noted the ineffectiveness of the numerous medications tried by Claimant and prescribed Claimant yet another medication. *Id.* at 22-23. A progress note dated 14 September 2009 indicates that Alfred A. DeMaria, M.D., Claimant's treating neurologist, prescribed yet another medication. [DE-27.2 at 13].

Moreover, in reaching his conclusion, the ALJ relied on alleged inconsistent statements made by Claimant to Dr. Bhat during the course of his treatment of Claimant. (R. 17). In particular, the ALJ noted "[i]n May 2006, the claimant reported experiencing migraines a couple of times a week ... [; h]owever, in follow-up records from August 2006, the claimant denied having significant prior headaches." (R. 17, 203, 257). However, as argued by Claimant, the ALJ mischaracterized Dr. Bhat's treatment records. In treatment records dated 11 July 2006, 9 August 2006, 2 October 2006, 31 October 2006, 3 January 2007, Dr. Bhat notes that Claimant "was diagnosed with migraine headaches several weeks ago [and] [] denies having significant prior headaches." (R. 245, 247, 253, 255). It is evident Dr. Bhat was not stating that Claimant was denying the existence of severe headaches and indeed, his medical records indicate Claimant complained of being plagued by headaches on a frequent basis. Rather, in a July 2006 follow-up report, the date the notation at issue first appeared, Dr. Bhat was simply noting that Claimant had recently been diagnosed with migraine headaches but had denied a significant prior history of such headaches. (R. 245). This notation was repeated in subsequent treatment records and in reviewing Dr. Bhat's records in totality, it is apparent this notation was repeated in error. Indeed, almost one year following Dr. Bhat's initial treatment of Claimant for migraine headaches and numerous treatment records outlining Claimant's complaints, progress reports from Dr. Bhat continued to indicate that Claimant had only been

9

Case 7:10-cv-00149-FL   Document 32   Filed 05/23/11   Page 9 of 19

diagnosed "several weeks ago." *Id.* Accordingly, upon considering the medical record as a whole, it is clear Claimant did not make inconsistent statements to Dr. Bhat regarding her migraine headaches; thus, the ALJ's discounting Claimant's credibility on this basis was error.

In supporting the ALJ's decision, Defendant points to alleged inconsistencies between Claimant's testimony and statements appearing in a third-party function report by Pasty Humbles ("Humbles"), a friend of Claimant's. Def.'s Mem. Supp. Def.'s Mot. J. Pleadings at 14 ("Def.'s Mem."); (R. 129-36). In particular, Defendant contends that Claimant's testimony during the administrative hearing that she "frequently experiences migraines, is unable to predict when they will occur, and is totally disabled when they do is inconsistent with Humbles' report that Plaintiff continues to drive by herself regularly." Def.'s Mem. at 15; (R. 132). The ALJ acknowledges Humbles' report, observing, for example, Humbles' statement that "claimant drives and goes out alone, *when her illness[] allow[s].*" (R. 14) (emphasis added); (R. 132). However, it is not evident that the ALJ relied upon this report to discredit Claimant's credibility. In fact, the ALJ accorded "little weight" to Humbles' report "because it is inconsistent with the clinical findings and the other evidence of record." (R. 14). Defendant relies also on statements appearing in a disability report and a function report, which allegedly contradict Claimant's testimony. *Id.* at 14 n.7 (citing R. 113, 154-55). However, the ALJ does not cite nor discuss the disability or function reports in evaluating Claimant's testimony and this court cannot therefore consider this evidence in determining whether the ALJ acted appropriately. *See Shoulars v. Astrue*, 671 F. Supp. 2d 801, 818 (E.D.N.C. 2009) (explaining "this court must 'judge the propriety of the [ALJ's determination] solely by the grounds invoked by the [ALJ]'") (quoting *SEC v. Chenery Corp.* 332 U.S. 194, 196 (1947) (noting a court may not substitute its own reasoning for that of the agency)).

Obviously, the lack of objective evidence did not prevent the ALJ from finding that Claimant's headaches constitute a severe impairment. (R. 11). Moreover, the ALJ found Claimant's statements credible in part based on the finding that Claimant cannot be exposed to hazards on more than an occasional basis. (R. 12). Nonetheless, "an ALJ must be particularly diligent in making credibility determinations with regard to migraines, because laboratory tests cannot prove their existence at this time." *Parsley*, 2009 U.S. Dist. LEXIS 56837, at *11, 2009 WL 1940365, at *4. Ultimately, courts must consider "'symptom patterns' in their efforts to establish [a claimant's] credibility with regard to migraines," including claimant's history of migraine headaches, treatment notes regarding migraines, medications prescribed for migraines and whether the claimant had received diagnoses of migraines in the past. *Id.* (citation omitted). Here, three physicians found Claimant suffered from migraines and experienced migraine symptoms on a regular basis since at least 2006, such as blurry vision and photophobia, and their treatment records indicate Claimant was prescribed numerous medications for migraines. The record does not contain any statements by Claimant's doctors questioning the frequency or severity of Claimant's migraines. *See Stebbins v. Barnhart*, No. 03-C-0117-C, 2003 U.S. Dist. LEXIS 25105, at *5, 2003 WL 23200371 at *2 (W.D. Wis. Oct. 21, 2003) (finding it important that the ALJ "never addressed the fact that none of the doctors who treated plaintiff questioned the existence or severity of her headaches, despite the lack of observable physical evidence"). Because any reliance by the ALJ on a lack of abnormal diagnostic findings in evaluating Claimant's credibility is incorrect as a matter of law, and in light of the ALJ's reliance on an inconsistency not evident to the court, the court cannot conclude the ALJ's determination that Claimant's statements regarding the limitations experienced as a result of her migraine headaches are not entirely credible is supported by substantial evidence.

## II. The ALJ erred in evaluating the opinion of Claimant's treating physician.

Claimant contends the ALJ should have accorded controlling weight to the opinion of Claimant's treating neurologist, Alfred A. DeMaria, M.D. Pl.'s Mem. at 10.

The ALJ must generally give more weight to the opinion of a treating physician because that doctor is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 404.1527(d)(2). However, "[c]ircuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig*, 76 F.3d at 590 (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see also Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted); *Wireman v. Barnhart*, No. 2:05-CV-46, 2006 U.S. Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (stating an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source ... if he sufficiently explains his rationale and if the record supports his findings"); 20 C.F.R. § 404.1527(d)(3).

When the ALJ does not give the opinion of a treating physician controlling weight, the ALJ must weigh the opinion pursuant to the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. 20 C.F.R. § 404.1527(d)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical

12

opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96-2p, 1996 SSR LEXIS 9, at *12, 1996 WL 374188, at *5.

The medical opinion at issue appeared in a form dated 9 December 2009 containing a description of the demands of sedentary work followed by three questions, two of which simply solicit "yes" or "no" responses. (R. 333). Dr. DeMaria's responses indicate Claimant is not capable of performing the requirements of sedentary work on a continuous and regular basis due to "[r]ecurring disabling refractory migraines." *Id.* Asked whether this conclusion is based on his "clinical observations, tests results, and/or other medical evidence to a reasonable degree of medical probability," Dr. DeMaria responded "yes" without elaboration. *Id.* However, the ALJ accorded "little weight" to Dr. DeMaria's opinion because it is "conclusory, vague and unsupported by my [sic] clinical findings or observations," "unsupported by the other medical evidence of record," and "goes to issues reserved for decision by the Commissioner." (R. 14); *see* 20 C.F.R. § 404.1527(e)(1); S.S.R. 96-5p, 1996 SSR LEXIS 2, at *5, 1996 WL 374183, at *2 (explaining statements concerning an individual's inability to work are reserved to the Commissioner).

Where a physician presents relevant evidence to support his opinion, his opinion is entitled to more weight. 20 C.F.R. § 404.1527(d)(2). Thus, form reports are arguably entitled to little weight due to the lack of explanation. *See Nazelrod v. Astrue*, 2010 U.S. Dist. LEXIS 77379, at *16, 2010 WL 3038093, at *6 (D. Md. Aug. 2, 2010) (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)) ("Form reports in which a physician's obligations [sic] is only to check a box or fill in a blank are weak evidence at best.") (alteration added). Also, while statements concerning an individual's

13

inability to work are reserved to the Commissioner, such statements must nevertheless be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); S.S.R. 96-5p, 1996 SSR LEXIS 2, at *5, 1996 WL 374183, at *2 (explaining "our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner").

Here, while Dr. DeMaria, a specialist, did not cite to any laboratory tests or clinical findings confirming the severity of Claimant's symptoms in the medical opinion at issue, his progress reports set forth classic migraine symptoms complained of by Claimant, including a headache localized to one side of the head, nausea, visual aura and focal neurological deficits. [DE-27.2 at 14, 17]. Furthermore, as explained previously, similar complaints were noted by Drs. Bhat and Somayajula in their treatment of Claimant. The ALJ, however, failed to acknowledge the abundant documentation of migraine diagnoses, symptoms and signs by Drs. Bhat and Somayajula as being "objective" evidence to support Dr. DeMaria's opinion.

Defendant notes the ALJ's assessment of Dr. DeMaria's opinion is supported by the opinions of state agency physicians, William Farley, M.D., and Frank Virgili, M.D, both of whom found Claimant capable of performing medium work. Def.'s Mem. at 21, 23; (R. 14, 278, 314); *see Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (noting an ALJ may rely on the opinions of non-examining medical sources, even when those opinions contradict the treating physician's opinion, if they are consistent with the record). In according these opinions "significant weight," however, the ALJ stated only that they were "generally consistent with the other evidence of record." (R. 14). However, the ALJ's decision makes clear that "other evidence of record" includes

14

Claimant's normal MRI, MRA and CT scans, upon which the ALJ improperly relied. Defendant argues further Humbles' statement that Claimant "drives and goes out alone" lends further credence to the ALJ's assessment of Dr. DeMaria's opinion. Def.'s Mem. at 21, 23. As stated previously, it is not clear to the extent to which the ALJ relied on this statement and as the ALJ's decision indicates, Humbles' qualified this statement, noting Claimant drives only "when [her] illness[] allow[s]." (R. 14, 132).

The ALJ provided some appropriate reasons for discounting Dr. DeMaria's opinion, including his finding that Dr. DeMaria commented on an issue reserved to the Commissioner and that Dr. DeMaria's report is conclusory. Nevertheless, as it is unclear from the decision the extent to which the ALJ placed emphasis on the absence of objective medical evidence and given the nature of chronic migraines and the other evidence of record documenting Claimant's complaints of the same, the court cannot conclude that the ALJ's discounting of Dr. DeMaria's opinion is supported by substantial evidence.

### III. The ALJ erred in failing to discuss Medicaid's determination of disability.

Claimant contends the ALJ erred in failing to discuss the 20 October 2008 decision of the North Carolina Department of Health and Human Services ("NCDHHS") finding Claimant eligible for Medicaid benefits. Pl.'s Mem. at 11; (R. 172).

The regulations governing the Social Security Administration's ("SSA") disability determinations provide that "[a] decision by . . . any other governmental agency about whether you are disabled . . . is based on its rules. . . . We must make a disability . . . determination based on social security law. Therefore, a determination made by another agency that you are disabled . . . is not binding on us." 20 C.F.R. § 404.1504. Nevertheless, a decision by a state agency finding an

15

Case 7:10-cv-00149-FL   Document 32   Filed 05/23/11   Page 15 of 19

individual disabled qualifies as "evidence" that relates to a individual's claim and that the SSA "can use to reach conclusions about [an individual's] medical impairments(s) . . . ." 20 C.F.R. § 404.1512(b)(5).

Defendant acknowledges that courts of this district have determined remand is necessary where an ALJ fails to discuss a Medicaid disability decision. Def.'s Mem. at 24; *see e.g., Alexander v. Astrue*, No. 5:09-CV-432-FL, 2010 U.S. Dist. LEXIS 117955, at *11, 2010 WL 4668312, at *4 (E.D.N.C. Nov. 5, 2010) (observing "[t]he courts of this district have long determined that remand is appropriate in [] cases" where the ALJ fails to consider disability decisions by other agencies, including NCDHHS Medicaid rulings, and collecting cases). Here, the ALJ provided no discussion regarding decisions by other agencies beyond stating that he "considered opinion evidence in accordance with the requirements of . . . SSR[] . . . 06-03p." (R. 13). However, in reliance on S.S.R. 06-03p and *Saunders v. Comm'r of Soc. Sec.*, No. 1:08-CV-1136, 2010 U.S. Dist. LEXIS 27526, 2010 WL 1132286 (W.D. Mich. Mar. 3, 2010), Defendant contends no further analysis was required. Def.'s Mem. at 24.

S.S.R. 06-03p expressly provides that "there is a distinction between what an adjudicator *must consider* and what the adjudicator *must explain* in the disability determination or decision . . . ." S.S.R. 06-03p, 2006 SSR LEXIS 5 at *16, 2006 WL 2329939, at *6 (emphasis added). Evidence of a disability decision by another governmental agency is included as evidence that <u>must</u> be considered. *Id.*, 2006 SSR LEXIS 5 at *17, 2006 WL 2329939, at *6. However, the regulation states only that the ALJ "*should* explain the consideration given to these decisions in the notice of decision . . . . " *Id.*, 2006 SSR LEXIS 5 at *18, 2006 WL 2329939, at *6-7. Based on the distinction between what an ALJ <u>must</u> do as opposed to what he <u>should</u> do, Defendant contends

16

*Alexander* and the cases cited therein are unpersuasive. Def.'s Mem. at 24. In further support of this argument, Defendant notes in *Saunders*, the plaintiff, as here, argued the ALJ committed reversible error because he failed to consider a state decision granting plaintiff Medicaid and disability benefits. *See Saunders*, 2010 U.S. Dist. LEXIS 27526, at *22, 2010 WL 1132286, *7. The *Saunders* court noted the ALJ "did not provide any explanation beyond stating that he had considered the disability determinations made by other sources" but held pursuant to S.S.R. 06-03p, nothing more was required. *Saunders*, 2010 U.S. Dist. LEXIS 27526, at *25, 2010 WL 1132286, *8. In so holding, the *Saunders* court emphasized S.S.R. 06-03p provides only that "the ALJ 'should' explain his consideration of other agency decisions" and "[i]f the Social Security Administration had intended to require explanations, it would have selected mandatory language rather than using the term 'should.'" *Id.* (citing S.S.R. 06-03p, 2006 SSR LEXIS 5 at *15, 2006 WL 2329939, at *7).

The court finds *Saunders*, in addition to not being binding on this court, is not especially persuasive. The court is not convinced an ALJ's general statement that he considered all the evidence (with only a citation to the applicable regulations) is sufficient under the regulations. It is the ALJ's duty to sufficiently articulate the analysis supporting his decision to credit or discredit evidence so the court can conduct a meaningful review of the administrative decision. *See Owens v. Barnhart*, 444 F. Supp. 2d 485, 492 (D.S.C. 2006) (noting the ALJ is not bound by another government agency's decision, but "should be required to provide sufficient articulation of his reasons for [rejecting the decision] to allow for a meaningful review by the courts"). Here, the ALJ's acknowledgment that his decision is guided by numerous regulations, including S.S.R. 06-03p, without further comment, does not afford this court the ability to conduct a meaningful review of the ALJ's consideration of the Medicaid disability decision. Thus, consistent with district court

precedent, the court finds the ALJ committed error when he neglected to even mention the Medicaid decision in his ruling. *See Walton v. Astrue*, No. 7:09-CV-112-D, 2010 U.S. Dist. LEXIS 68265, at *3, 2010 WL 2772498, at *1 (E.D.N.C. July 9, 2010) (remanding and noting "the ALJ said nothing, and [S.S.R. 06-3p] requires more than 'nothing'").

Nevertheless, Defendant argues that to the extent the ALJ's failure to mention the Medicaid disability decision is error, such error is harmless. Def.'s Mem. at 25. However, "Medicaid decisions employ the same standards as the Social Security Administration uses in disability determinations." *Alexander*, 2010 U.S. Dist. LEXIS 117955, at *9, 2010 WL 4668312, at *4; *see* (R. 172) (Claimant's NCDHHS Medicaid decision which provides that "the Medicaid Eligibility Manual requires that an applicant meet the Supplemental Security Income Standards found at 20 C.F.R. [§] 416 in order to be eligible for Aid to the Disabled-Medical Assistance"). Given the NCDHHS decision "in this case is at least probative as that agency applied the same rules yet reached the opposite result," and the ALJ neglected to mention the decision entirely, the court finds the error is not harmless. *Id.*, 2010 U.S. Dist. LEXIS 117955, at *10, 2010 WL 4668312, at *4.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be GRANTED, Defendant's Motion for Judgment on the Pleadings be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District

18

Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, 23rd day of May, 2011.

*Robert B. Jones, Jr.*
Robert B. Jones, Jr.
United States Magistrate Judge